**UNITED STATES of America**

v.

**Mohammed MUSTAKEEM, Defendant.**

**CR No. 90–166.**

United States District Court, W.D. Pennsylvania.

March 4, 1991.

Margaret Picking, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Caroline Roberto, Gary Zimmerman, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court is the Motion of the defendant, Mohammed Mustakeem, (Mustakeem) for release on bail.

Mustakeem was convicted of the crime of conspiracy to possess with the intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C.A. § 846.[1]

During trial, the Government adduced evidence to prove, *inter alia*, that Mustakeem was arrested on August 16, 1990, at the Marriott Inn, Borough of Green Tree, Allegheny County, Pennsylvania, as part of a reverse sting undercover operation conducted by agents of the Drug Enforcement Administration (DEA) together with various other local law enforcement agencies; that Mustakeem agreed to purchase four kilograms of cocaine from a confidential informant for the price of approximately $132,000; that Mustakeem was accompanied by an unindicted accomplice, who was waiting for Mustakeem in a vehicle in Marriott parking lot and who was in possession of a fully loaded five-shot .38 caliber pistol; that Mustakeem had previously engaged in the sale of cocaine and had previously caused his armed accomplice to threaten a complaining drug purchaser with the weapon.

In support of his Motion for release on bail, Mustakeem claims he is the owner of several businesses and the lessee of office space in Atlanta, Georgia;[2] that he is personally required to conclude his business affairs; that he has "family ties" in the Pittsburgh, Pennsylvania, area; that he has no prior criminal record and is neither a risk for flight nor a danger to the community because he never committed the crime for which he was convicted.

Mustakeem also asserts that he feels, apparently because of his conviction, that "the judicial system has failed him."

Moreover, Mustakeem claims that a substantial constitutional issue has been raised in this case which has not yet been decided by the United States Court of Appeals for the Third Circuit, *i.e.*, there is no statutory authority or other legal basis which would authorize the Government to possess

---

1. His two co-conspirators pleaded guilty before trial. One co-conspirator, Todd Wright, testified against Mustakeem during his trial.

2. However, defendant testified he has ceased operation of apparently two of his businesses, a hair replacement business and a suntanning salon known as "Tan Your Buns" and later "Sun Your Buns."

and/or distribute cocaine as it did during the "reverse sting" operation in question.

Finally, Mustakeem points to the case of *U.S. v. Jamie Giampa,* presently pending in this Court. Giampa was convicted of various drug transactions and was also involved in prior drug transactions with some of the Government witnesses in this case.

Mustakeem's counsel represents that Giampa's bail had been set at $50,000 prior to trial and that after conviction was set increased to $100,000 by another Judge of this Court. In effect, Mustakeem argues that "parity" requires that he receive the same treatment as Giampa.

At the time of Mustakeem's arrest for the instant charge, he was denied bail due to the presumption raised by 18 U.S.C. § 3142(e).

At the hearing on his Motion, Mustakeem did not testify. However, his counsel merely referred to the testimony of Mustakeem at trial, and also represented that Mustakeem's family living in Pittsburgh is willing to "put themselves on the line" in connection with Mustakeem's release on bail. In addition, Mustakeem's counsel argued that the Court could impose conditions or a combination of conditions which would assure the appearance of Mustakeem for his sentencing hearing which has been scheduled for April 12, 1991.

For the reasons set forth below, Mustakeem's Motion will be denied.

### Discussion

 Effective November 29, 1990, Title IX of the *Crime Control Act of 1990,* amended 18 U.S.C., § 3143(a),[3] to restrict release pending sentence or appeal of individuals who have been convicted of certain serious offenses set out in 18 U.S.C. § 3142(f)(1)(A), (B) and (C).

Moreover, it also amended 18 U.S.C., § 3145 to provide for release in certain "exceptional cases."

As amended, § 3143(a) reads as follows: "Except as provided in paragraph (2), the judicial officer ... shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of § 3142 and is awaiting imposition or execution of sentence be detained unless—

"(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

"(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; *and* (emphasis supplied)

"(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."

Subsection (c) of § 3145 of Title 18 U.S.C. is amended by adding the following: "A person subject to detention pursuant to section 3242(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3243(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."[4]

The crimes specified in 18 U.S.C. § 3142(f)(1) are:

(A) A crime of violence;

(B) An offense for which the maximum sentence is life imprisonment or death;

(C) An offense for which a maximum term of imprisonment of ten years or more is proscribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.* ), the Controlled Substances Import and Export Act, (21 U.S.C. 951 *et seq.* ), or

---

**3.** Notwithstanding that Mustakeem's conduct forming the basis of his prosecution occurred in August 1990, the amendments effective November 29, 1990, apply to his Motion for bail. *Cf. U.S. v. Kowalik,* 765 F.2d 944 (10th Cir.1985); *U.S. v. McCahill,* 765 F.2d 849 (9th Cir.1985); *U.S. v. Ballone,* 762 F.2d 1381 (11th Cir.1985); *U.S. v. Farran,* 611 F.Supp. 602 (D.C.Tex.1985),

*affirmed* 784 F.2d 1111, *cert. denied* 476 U.S. 1144, 106 S.Ct. 2256, 9 L.Ed.2d 701 (1986).

**4.** Mustakeem does not contend and the Court does not perceive that. there are "exceptional reasons" why his detention would not be appropriate.

section 1 of the Act of September 15, 1980 (21 U.S.C. 955a); or

(D) Any felony if the person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses.

It is clear that the crime of which the defendant has been convicted falls within the parameters of § 3142(f)(1)(C) in that the maximum sentence the defendant can receive is more than ten years. In any event, the defendant is subject to a minimum mandatory sentence of not less than five years.

Under the Sentencing Guidelines, if one kilogram of cocaine is involved and assuming Mustakeem's criminal history category of zero or one, the base offense level for Mustakeem is 26 which would place the sentence in the 63 to 78 month range.

However, if four kilograms of cocaine are involved as is the case here, the base offense level is 30 and assuming a criminal history category of zero or one, the sentence is in the 97 to 120 month range.[5]

Since the attorney for the government has not recommended that no sentence of imprisonment be imposed on Mustakeem, this Court then must focus on whether ... (i) there is a substantial likelihood that a motion for acquittal or a new trial will be granted *and* (ii) there is clear and convincing evidence that the defendant is not likely to flee or pose a danger to any other person or the community.

■ Based on the overwhelming evidence of Mustakeem's guilt, the Court finds that there is no substantial likelihood that a motion for acquittal or new trial will be granted.

Mustakeem has not cited any authority to support his argument that there is a substantial constitutional issue in this case, *i.e.*, that the conduct of the Government is not authorized by law, statutory or otherwise.

The Court's independent research has not uncovered any authority dealing with this issue. However, the Supreme Court of the United States in *U.S. v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) in discussing the "entrapment" defense and/or its progeny, made the following observation:

"The illicit manufacture of drugs is not a sporadic, isolated criminal incident, but a continuing, though illegal, business enterprise. In order to obtain convictions for illegally manufacturing drugs, the gathering of evidence of past unlawful conduct frequently proves to be an all but impossible task. Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must, as a general rule, also be permissible. For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them. Law enforcement tactics such as this can hardly be said to violate 'fundamental fairness' or 'shocking to the universal sense of justice,'" *Kinsella [v. United States ex. rel. Singleton], supra,* [361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960) ]; *Id.,* 411 U.S. at 432, 93 S.Ct. at 1643.

It is noteworthy that Congress has specifically exempted law enforcement officials from prosecution for activities in connection with enforcement of drug laws. 21 U.S.C. § 885(d).

Moreover, while there is no specific reference in the drug acts with regard to "reverse sting" operations, it is clear that

---

**5.** These guideline sentence ranges do not take into account any applicable enhancement provi- sion.

Congress is not unaware of such law enforcement tactics.

Indeed, in the legislative debate concerning the "Omnibus Drug Initiative Act of 1988," 134 Cong.Rec. S15990 (daily ed. October 14, 1988) Senator Cochran, while urging assistance for United States Attorneys throughout the country in drug prosecutions stated:

"In drug cases alone, the shortage of prosecutors is a serious problem, as described in a recent letter to me from Robert Whitwell, U.S. Attorney for the Northern District of Mississippi:

"Drugs are an ever-increasing problem in our district; we have had major drug busts or cocaine sales around the district. In Greenwood, either defendants have been convicted so far in a twelve-year cocaine and marijuana conspiracy. Greenville's largest cocaine dealer, Fred Dotson, was convicted with eleven others and is now serving 20 years. We also have a major cocaine conspiracy ready for trial in Columbus. We have also convicted over six major cocaine dealers in Tupelo, including police officers. *We have had about ten other major cocaine cases and recently had two additional 'Reverse Sting' cases where large amounts of cash were seized by the Mississippi Bureau of Narcotics and Tupelo Lee Metro Unit.* I mention this unit because there is only one DEA agent in our 37 counties, and without the help of the state narcotics bureau we simply could not prosecute drug cases.

"There are no personnel assigned to the OCDETF drug task force in our district as there are in every other district in the Southeast region. We have been promised one attorney position, but to date have still been denied it after three years of requesting. Of course Congress has supported Operation Alliance and approved new positions, but we do feel each district should be represented by a Task Force Attorney to properly attack this very serious matter." (Emphasis supplied)

At all times, the cocaine which Mustakeem agreed to purchase was either in the possession or control of the Government and met in all respects the guidelines of the DEA with regard to "reverse sting" operations found at the *Criminal Law Reporter*, Vol. 20, No. 17, February 2, 1977, p. 2–277:

"E. Undercover operations shall not include the furnishing of a controlled substance except in extraordinary cases after consultation with the appropriate United States Attorney, when the Administrator of DEA determines that there is reason to believe such activity will lead to the prosecution of one or more individuals who finance, control, or direct a drug trafficking organization, or to the interdiction of the flow of drugs from a significant drug trafficking operation. In making such determinations the Administrator of DEA shall take into account the type and amount of drug involved; its likelihood of reaching consumers; the number and position in the drug trafficking organization of subjects who have, and who have not, been sufficiently identified to be arrested; the type and amount of evidence necessary to complete the investigation; the time required to attempt to do so; and the likelihood of obtaining such evidence." [6]

Therefore, the Court finds there is no substantial likelihood that Mustakeem will be granted an acquittal or a new trial.

■ The evidentiary basis articulated by Mustakeem's counsel in support of his contention that Mustakeem is not likely to flee or pose a danger to any other person or the community does not constitute requisite clear and convincing evidence for

---

**6.** In 21 U.S.C. § 871(b), the Attorney General is authorized *to promulgate and enforce rules, regulations and procedures* for the "efficient execution of his functions" under applicable drug abuse prevention and control legislation. Rules, regulations and procedures of this kind are presumed valid. *Cf. United States v. Obermeier,* 186 F.2d 243 (1950). Also see *United States v. Morehead,* 243 U.S. 607, 614, 37 S.Ct. 458, 461, 61 L.Ed. 926 (1917); *United States v. Smull,* 236 U.S. 405, 410, 35 S.Ct. 349, 350, 59 L.Ed. 641 (1915).

Mustakeem's release on bail.[7]

As a threshold, because of the crime of which Mustakeem is convicted, there is a presumption that he is a danger to the community. *United States v. Strong*, 775 F.2d 504 (3d Cir.1985) at 507 where the Court said:

"In light of the explicit equation of a drug offense with danger to the safety of the community for purposes of release or detention of a defendant pending trial, it is manifest that Congress intended the same equation when dealing with a defendant who has already been convicted of such a drug offense and is awaiting sentence."

The Court makes the following findings in support of its conclusion that the defendant is both a flight risk and a danger to the community:

(1) The transaction in question involves a serious narcotics law transgression in that Mustakeem agreed to purchase four kilograms of cocaine for approximately $132,000.

(2) The expert testimony of the Government established that the cocaine in question was 95 percent pure and could be cut with Inositol so as to quadruple the profits from street sales.

(3) The defendant's residence and business involvements have been in Atlanta, Georgia, and not in the Western District of Pennsylvania.

(4) Mustakeem's family ties and his contention that he has business matters which need to be wound up of themselves do not overcome the presumption. *U.S. v. Castiello*, 878 F.2d 554 (1st Cir.1989)[8].

(5) Mustakeem's employment of an accomplice armed with a loaded pistol which Mustakeem threatened to use against a dissatisfied customer on at least one prior drug transaction and his past history of drug dealing and his financial ability to flee all dispel the defendant's contention that he

is not a danger to the community and/or is not a risk of flight. *U.S. v. Bonavia*, 671 F.Supp. 752 (S.D.Fla.1987).

Mustakeem had originally agreed to purchase four kilograms of cocaine for approximately $132,000. However, because he had no prior drug dealings with the Government's confidential informant and therefore did not entirely trust him, he only purchased one kilogram of cocaine immediately prior to his arrest for the price of $33,000, and postponed the purchase of the additional cocaine for the following day. Therefore, the Court concludes that either Mustakeem possesses approximately $99,000 or has access to that amount, which would make it entirely feasible that he could very well flee the jurisdiction. The sentence that he faces also dispels his contention that there is no risk of flight. *U.S. v. Kenney*, 603 F.Supp. 936 (D.Maine 1985).

(6) The fact that Mustakeem would accept the most stringent conditions to insure his appearance for sentencing and to prevent him from harming the community does not overcome the presumption. *U.S. v. Deitz*, 629 F.Supp. 655 (N.D.N.Y.1986).

Finally, the contention of Mustakeem that "parity" requires this member of the Court to fix his bail at $100,000 as was the bail granted to defendant Jamie Giampa is completely without merit.

Obviously, the right to bail pending sentencing must be decided on a case-by-case basis.

If Mustakeem's "parity" argument had merit, nevertheless, there is no basis for the Court to compare Mustakeem's situation with that of Giampa since the record is absolutely devoid of any evidence which would permit a comparison, except the representation of Mustakeem's counsel that Giampa was also convicted of drug transactions.

Therefore, the inescapable conclusion that this Court must reach is that

---

7. "Clear and convincing evidence" means "something more than a preponderance of the evidence and something less than beyond a reasonable doubt." *U.S. v. Catala Fonfrias*, 612 F.Supp. 999 (D.P.R.1985).

8. At hearing, the defendant did not adequately explain why the defendant's business involvements could not be wound up via power of attorney as argued by the Government.

**1178**

Mustakeem failed to meet his burden under 18 U.S.C. § 1343(a).